IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JEREMY KEE,<br><br>             Plaintiff,<br><br>v.<br><br>FIFTH THIRD BANK et al.,<br><br>             Defendants. | **MEMORANDUM DECISION<br>AND ORDER**<br><br><br>Case No. 2:06-CV-00602-CW<br><br>Judge Clark Waddoups |

      The matter before the court is Plaintiff Jeremy Kee's ("Kee") Motion for Partial Summary Judgment, and Defendants Fifth Third Bank, Jonathan Meade and Fannie Mae's (collectively, "Defendants") Motion for Summary Judgment.  A hearing on both motions was held on December 3, 2008.  Brian W. Steffensen appeared on behalf of Plaintiff Jeremy Kee.  Mona L. Burton and Darren G. Reid appeared on behalf of Defendants.  Before the hearing, the court reviewed the memoranda related to the motions, as well as other pleadings and memoranda on record with the court.  After hearing oral arguments, the court took the matter under advisement.  After due consideration of the documents and oral arguments made by counsel, the court renders the following Memorandum Decision and Order.

## FACTUAL BACKGROUND

Kee obtained a loan from Matrix Financial Services Corporation ("Matrix") on October 23, 2001, in the principal amount of $150,600.00.[1]  Kee executed a Note in favor of Matrix, which was secured by a Deed of Trust on the property at issue in this dispute (the "Property").[2]  Part of the loan documentation included a disclosure statement regarding the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. § 2605 *et seq*, and Kee's rights under that act.[3]  The disclosure statement included, among other things, information about a loan servicer's obligations if it receives a qualified written request from a borrower for information about servicing his or her loan.[4]  In September 2002, Fifth Third Bank's predecessor-in-interest, R-G Crown Bank, FSB ("Crown Bank") acquired rights to service the loan, and subsequently was assigned the Trust Deed as well.[5]

Due to the low equity value in the Property, Kee had to have private mortgage insurance ("PMI") as a condition of the loan.[6]  Subsequent to his purchase, Kee made home improvements that increased the value of the Property.[7]  In approximately April 2005, he obtained a new appraisal, and

---

[1]  Exhibits 1–33 to Defendant's Mem. in Supp. of Mot. for Summary Jdgmt., at Exs. 1, 3 (hereinafter "Exhibits Addendum") (Docket No. 96).

[2]  Id.

[3]  Id., Ex. 4.

[4]  Id.

[5]  Id., Ex. 7.

[6]  Id., Ex. 5.

[7]  See id., Ex. 13.

based on that appraisal, he asked the Bank to remove the PMI because his equity value exceeded twenty percent.[8]

Rather than removing the PMI, Crown Bank provided Kee with a standard form that outlined the conditions for waiving the PMI.[9]  One condition required Kee to pay $450.00 for a second appraisal ordered by Crown Bank.[10]  Kee objected to this condition because he had already obtained an appraisal and did not want to pay for another appraisal.

After making this objection in writing, Kee continued to pay his mortgage payment, but he subtracted off the PMI amount.[11]  Crown Bank treated the payment as a partial payment.[12]  This led to a series of oral and written communications between the parties regarding Kee's loan and default actions taken by the Bank.  Kee contends that Crown Bank failed to meet its obligations under RESPA because it did not respond appropriately to Kee's qualified written requests.[13]  He further contends he was excused from making mortgage payments due to such violations, and thus stopped making his mortgage payments in April 2006.[14]  In June 2008, a notice of default was recorded, and

---

[8]  Exhibits Addendum, Exs. 11; 26, at JK0006 (Docket No. 96).

[9]  Id., Ex. 8, 12.

[10]  See id., Ex. 8; 26, at JK 0038.

[11]  Id., Ex. 9.

[12]  Id., Ex. 6, Mooney Dep., 36:3–19 (Docket No. 96).

[13]  Id., Ex. 26, at JK 0045–46.

[14]  Id.

the property was later sold at a Trustee's Sale.[15]

## PROCEDURAL HISTORY RELATED TO THIS MOTION

In his summary judgment motion, among other issues, Kee argued that the Note and Trust Deed are void and unenforceable because Matrix was not properly authorized to originate loans in Utah at the time it made the loan.  In his Amended Complaint filed in April 2007, Kee alleged,  "At the time Matrix originated Kee's loan, Matrix was not properly licensed in the State of Utah and therefore not authorized to originate loans within the State of Utah."[16]  Kee further asserted he was entitled to damages arising from Matrix's improper origination of the loan.[17]

Matrix did not answer or otherwise respond to Kee's Amended Complaint, but in August 2007,  Kee, Matrix, and Crown Bank stipulated "to dismiss with prejudice all of the claims asserted by Kee against Matrix in this action."[18]  The court granted the motion and entered an order dismissing with prejudice all claims against Matrix, but stated that the Order had "no bearing" on claims asserted by Kee against Crown Bank or by Crown Bank against Kee.[19]

On December 1, 2008, Kee filed a Notice of Withdrawal of part of his motion.  The portion that was withdrawn pertains to whether the Note and Trust Deed are invalid because Matrix

---

[15]  Notice of Trustee's Sale (Docket No. 139).

[16]  Amended Complaint, ¶ 8 (Apr. 10, 2008) (Docket No. 44).

[17]  Id. ¶¶ 58, 60.

[18]  Stipulated Mot. to Dismiss Claims Against Matrix Fin. Srvs. Corp. (Aug. 27, 2007) (Docket No. 65).

[19]  Order Dismissing Claims Against Matrix Fin. Srvs. Corp. (Aug. 31, 2007) (Docket No. 66).

purportedly was not licensed to do business in Utah. As a result, the court will not address that issue in this decision.

## ANALYSIS

## I.    STANDARD FOR SUMMARY JUDGMENT

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'"[20] The court "examine[s] the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party."[21] Nevertheless, if an affidavit "lacks the foundational elements required by *Rule 56(e)*," such evidence is insufficient to create any genuine issues of material fact because it does not establish that a person is competent to testify on the factual issues.[22]

Here, in opposition to Defendants' motion for summary judgment, Kee filed a "Verification of Statement of Facts" that stated, "I have read my Memorandum in Opposition to Defendants' Motion for Summary Judgment and verify that the Statements of Fact there are true and correct, and that the factual allegations in my Amended Complaint are true."[23] Likewise, in support of his motion

---

[20] Kellogg v. Metro. Life Ins. Co., 549 F.3d 818, 825 (10th Cir. 2008) (quoting Fed. R. Civ. P. 56(c)).

[21] Id.

[22] Tesoro Ref. & Mktg. Co. v. Lyle Tucker Distrib., Inc., No. 1:06cv116, 2008 U.S. Dist. LEXIS 49867, at *6 (D. Utah 2008).

[23] Jeremy Kee's Verification of Statement of Facts in His Mem. in Opp. to Defendants' Mot. for Summary Jdgmt., at Ex. 1 (June 26, 2008) (Docket No. 112).

for partial summary judgment, Kee filed a "Verification of Facts" that stated, "I have read the memoranda support (sic) my motion(s) for summary judgment and verify that the Statements of Fact therein are true and correct."[24]  Kee offered no other evidence in support or in defense of the cross motion for summary judgment.

Kee's verifications are bald assertions that lack foundation regarding how Kee has personal knowledge of all of the facts asserted in his memoranda.  "Without a factual basis, [Kee's] opinions and conclusions are not probative and cannot create a genuine issue of material fact to preclude summary judgment."[25]  The court therefore looks to the exhibits filed by Defendants to determine these motions.

## II.    OVERVIEW OF RESPA

RESPA is a remedial act that is designed to protect consumers.[26]  It imposes a duty on loan servicers to respond to borrower inquires if the borrower submits a "qualified written request."  For a request to be qualified it must contain the following elements:

> [1] a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that [2] includes, or otherwise enables the servicer to identify, the name and account of the borrower; and [3] includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in

---

[24]   Jeremy Kee's Verification of Facts Re His Mem. in Opp. to Defendants' Mot. for Summary Jdgmt, His Mot(s). for Summary Jdgmt. (Aug. 29, 2008) (Docket No. 119).

[25]   Tesoro Ref. & Mktg. Co., 2008 U.S. Dist. LEXIS 49867, at *8.

[26]   In re Tomasevic, 275 B.R. 103, 114 (Bankr. M.D. Fla. 2001).

error or provides sufficient detail to the servicer regarding other information sought by the borrower.[27]

Although the last element is written broadly to include "other information sought by the borrower," the statement must be read in the context of section 2605(e)(1)(A). That subsection states:

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) *for information relating to the servicing* of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days . . . .[28]

Thus, any information sought by the borrower must be related to the servicing of the loan for it to fall under section 2605(e) of RESPA. The act defines "servicing" as follows:

> The term "servicing" means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 10, and making the payments of principal and interest and such other payments with respect to the amount received from the borrower as may be required pursuant to the terms of the loan.[29]

As stated above, once a loan servicer receives a qualified written request, within twenty business days thereafter, the servicer must send "a written response acknowledging receipt."[30] Then, within sixty business days, the servicer must take one of the following steps: (1) make any necessary corrections and notify the borrower; (2) after investigation, send a written explanation to the

---

[27]  12 U.S.C. § 2605(e)(1)(B).

[28]  Id. § 2605(e)(1)(A) (emphasis added).

[29]  Id. § 2605(i)(3).

[30]  Id. § 2605(e)(1)(A).

borrower that explains why the servicer believes the account is correct; or (3) after investigation, provide the requested information, "or an explanation of why the information requested is unavailable or cannot be obtained by the servicer."[31]  Under steps two and three, the servicer also must provide a name and telephone number of a person in its organization who can provide assistance to the borrower.[32]

## III.    KEE'S CORRESPONDENCE WITH CROWN BANK

Kee asserts that he sent a number of letters to Crown Bank regarding servicing of his loan. He further asserts that Crown Bank failed to respond to them in accordance with RESPA.  He therefore is seeking statutory damages.  In response, Fifth Third Bank asserts Crown Bank did respond to Kee's qualified written requests.[33]  For all other correspondence, the Bank asserts it was not required to respond because the other correspondence did not constitute qualified written requests for various reasons.  Those reasons are discussed individually below.

### A.    Correspondence Containing No Account Number

The Bank asserts it was not required to respond to any of Kee's letters that lacked an account number.  This is incorrect.  Section 2605(e)(B)(i) provides that a written request merely has to contain sufficient information for the loan servicer to identify the name and account number of the borrower.  Kee sent a number of letters to the Bank that contained his name and usually his address.

---

[31]  Id. § 2605(e)(2).

[32]  Id. § 2605(e)(2)(B)–(C).

[33]  Because Fifth Third Bank is Crown Bank's successor-in-interest, for ease of reference, these two entities shall be referred to collectively as the "Bank".

At times, it listed his account number.  Notably, the Bank has provided no evidence to show it was unable to determine who sent the letters.  Based on the information included in the letters, and the Bank's lack of evidence to show it could not identify the borrower, absence of an account number does not disprove the letters were qualified written requests.

### B.    Correspondence Sent to the Bank's Attorney

At times, Kee sent his correspondence to the Bank's attorney rather than to the Bank.  The Bank contends that all correspondence sent to its attorney rather than to the Bank do not constitute qualified written requests.  RESPA provides that if a loan servicer receives a qualified written request, the servicer must take action within sixty days.[34]  RESPA also states the servicer must receive the qualified written request from the borrower or an agent of the borrower.[35]  Although a borrower's agent is mentioned in RESPA, there is no corresponding reference to a servicer's agent.

"'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'"[36]  Because Congress refers to a borrower's agent but does not reference a servicer's agent in the applicable section of statute, the court concludes Congress intentionally excluded the servicer's agent.

---

[34]   12 U.S.C. § 2605(e)(2).

[35]   Id. § 2605(e)(1)(A).

[36]   Anderson v. United States DOL, 422 F.3d 1155, 1176 (10th Cir. 2005) (quoting Russello v. United States, 464 U.S. 16, 23 (1983)).

This conclusion is supported by case law from another jurisdiction.  In *Griffin v. Citifinancial Mortgage Co., Inc.*, a borrower sent a request for information to the loan servicer's attorney.  The attorney then forwarded the request to the servicer.  The court concluded that "the plain language [of the statute] imposes a duty upon the servicer to respond only when it receives a request from the borrower or the borrower's agent."[37]  Likewise, this court holds that written communications sent by Kee to the Bank's attorney did not constitute qualified written requests because they were not sent to the loan servicer.  Accordingly, documents control numbered JK 0070, JK 0071, JK0072, JK 0131–32, JK 0135, JK 0137–38, JK 0139, JK 0144, CB 00124, CB 00133, CB 00324–25, CB 00326–28, CB 00329–31, CB 00332–338, and CB 00359–364 were not qualified written requests.

### C.    Correspondence Drafted by the Bank or Its Agent

During Kee's deposition, he identified certain documents that he believes are qualified written requests.  Some of the documents he identified were letters from the Bank or its attorney to Kee, rather than letters from Kee to the Bank.  While the correspondence from the Bank or its attorney to Kee may have referenced questions Kee asked regarding his loan, this does not transform the correspondence into a qualified written request.  Accordingly, no document sent from the Bank or its attorney to Kee or his agent constituted a qualified written request.  These include documents control numbered JK 0052–53, JK 0055–56, JK 0058–61, and JK 0064–68.

### D.    Other Correspondence.

The Bank asks the court to declare that a number of other letters were not qualified written

---

[37] Griffin v. Citifinancial Mortgage Co., Inc., No. 3:05cv1502, 2006 U.S. Dist. LEXIS 6709, *6–7 (M.D. Penn. Feb. 1, 2006).

requests or were otherwise responded to correctly.  The Bank identifies the letters by their respective control numbers.  The court addresses each document as follows:

1.    <u>JK 0004</u>

JK 0004 is a letter, dated June 2, 2005, from Jeremy Kee to the Bank that listed his address and account number.[38]  In the letter, Kee acknowledged receiving a message regarding late fees that were assessed to his account.  Kee also indicated that he believed the PMI would be waived and asked the Bank to let him know if it foresaw any problem waiving the PMI.  The Bank contends the letter did not relate to loan servicing.  The court disagrees.  In addition to receiving principal and interest payments, "servicing" includes handling "other payments . . . as may be required pursuant to the terms of the loan."[39]  PMI payments are other payments required pursuant to the terms of the loan.  The fact that the Bank assessed late fees and declared Kee's loan to be in default when he failed to pay the PMI shows the PMI payments were connected to servicing Kee's loan.

Although the Bank disputes that document JK 0004 was a qualified written request, it nevertheless responded to the letter on June 3, 2005.[40]  The Bank therefore met its obligation under RESPA.

---

[38]  Exhibits Addendum, Ex. 11 (Docket No. 96).

[39]  12 U.S.C. § 2605(i)(3).

[40]  Exhibits Addendum, Ex. 12 (Docket No. 96).

2.  JK 0006 and CB 0279–80

a.  PMI Payment

CB 0279–80 is a letter, dated June 15, 2005.[41]  JK 0006 is a letter, dated June 24, 2005.[42]  In the June 15, 2005 letter, Kee contended that the PMI should be removed from his account.  In the June 24, 2005 letter, Kee informed the Bank that he would be subtracting the monthly PMI from his payments, and he specified what his new payment would be.  As stated previously, RESPA is a remedial consumer-protection statute that is construed liberally.[43]  Because Kee's letter informed the Bank what he believed his monthly payment amount should be, this constituted a dispute regarding his account.  Such disputes fall under RESPA.

In it briefing, the Bank contended it responded to the June 15, 2005 letter on July 12, 2005.[44]  During oral argument, the Bank argued its July 12, 2005 letter also responded to Kee's June 24, 2005 letter.  The Bank's letter informed Kee what his loan to value ratio was and what it had to be to remove the PMI.  Because the Bank's response explained that Kee had not sufficiently reduced his principal balance for the PMI to be removed, the Bank substantively addressed both of Kee's letters regarding his PMI payment.

---

[41]  Id., Ex. 27, at CB 0279–80 (Docket No. 96).

[42]  Id., Ex. 26, at JK 0006.

[43]  Rawlings v. Dovenmuehle Mortgage, Inc., 64 F. Supp. 2d 1156, 1165 (M.D. Ala. 1999).  "Remedial statutes are those which impact no contract or vested right, and do not disturb past transactions, but preserve and enforce the right and heal defects in existing laws prescribing remedies."  Id. (quotations and citations omitted).

[44]  See Exhibits Addendum, Ex. 14 (Docket No. 96).  Excluding week-ends and legal holidays, the Bank responded within eighteen days to the June 15, 2005 letter.

-12-

Kee contends, however, that when a borrower sends multiple qualified written requests to a loan servicer, the loan servicer must acknowledge and respond to each one individually.  RESPA requires that a loan servicer acknowledge receipt of a qualified written request within twenty days unless the loan servicer takes the necessary action within that time frame.[45]  Then the action and response satisfy the acknowledgment requirement.

The Bank's letter only expressly acknowledged receipt of Kee's June 15, 2005 letter.[46] Because it substantively responded, however, to both letters within twenty days, the Bank's  action and response satisfied the acknowledgment requirement.  Moreover, nothing in RESPA precludes a loan servicer from responding to multiple qualified written requests in one letter, as long as the response is timely and addresses each of the servicing issues raised by the borrower.  Here, the Bank's July 12, 2005 letter satisfied RESPA because it was timely and it responded to Kee's letters about his PMI payments.  Holding otherwise would serve "no substantial remedial purpose," and could lead to "harassing lawsuits by borrowers against their loan servicers."[47]

b.   New Appraisal

Prior to Kee sending the June 15, 2005 letter, the Bank informed Kee that if he wanted the PMI removed, he had to send $450.00 to the Bank for it to obtain a new property appraisal.  In the

---

[45]  12 U.S.C. § 2605(e)(1)(A).

[46]  Compare Exhibits Addendum, Ex. 14 (Docket No. 96) (stating "We have received your 3rd request to waive the Private Mortgage Insurance on your loan.") with Mem. in Supp. of Mot. for Summary Jdgmt., at ¶¶ 19–20 (Docket No. 91).

[47]  Marks v. Quicken Loans, Inc., 561 F. Supp. 2d 1259, 1264 n.6 (S.D. Ala. 2008).

June 15, 2005 letter, Kee disputed that he had to pay $450.00 for a new appraisal because he had already obtained a new appraisal from the same person who did the appraisal for the original loan. In his June 24, 2005 letter, Kee authorized the Bank to contact the appraiser to verify the value on the property. The Bank did not explain to Kee why his appraisal was insufficient. Nor did the Bank address Kee's statement that the Bank could contact his appraiser to obtain a copy of the new appraisal report. Instead, it merely repeated that it needed $450.00 for an appraisal so it could assess whether the PMI should be removed. This did not answer Kee's question regarding why the appraisal he obtained was insufficient, and the Bank provided no explanation regarding why it would not answer his question or contact his appraiser.

Nevertheless, simply because it would have been helpful for a bank to respond to a customer's question does not necessarily give rise to a RESPA violation when a bank fails to do so. As stated previously, "'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan."[48] Issues pertaining to the sufficiency of an appraisal or to obtaining a copy of an appraisal do not fall within the definition of "servicing." Consequently, even though the Bank failed to address these issues in its response, it is not liable under RESPA for that failure.

       3.    <u>JK 0017</u>

JK 0017 is a letter, dated February 16, 2006, wherein Kee informed the Bank he stopped payment on a check he sent because the Bank was not in conformance with state law and federal law.

---

[48] 12 U.S.C. § 2605(i)(3).

[49] In particular, Kee contended the loan agreement was null and void due to the Bank's violation of the law.  Challenging the validity of a loan is different from challenging how the loan has been serviced.  Consequently, correspondence about the validity of a loan does not constitute a qualified written request.[50]  Because document JK 0017 addresses validity rather than servicing, it is not a qualified written request.

        4.    <u>JK 0019</u>

JK 0019 is a fax cover sheet, dated February 22, 2006.[51]  Kee informed the Bank about a Notice of Mediation.  He also stated that he had recorded a call where the Bank admitted it had failed to provide "Mortgage insurance annual disclosures."[52]  Then he said, "I look forward to your response as to why I should not move forward with the class action suit, 2 day and counting to respond."[53]  Information about a mediation does not fall within the definition of loan servicing.  Moreover, commenting that the Bank failed to provide annual disclosures and threatening litigation also do not fall under loan servicing.  Consequently, document JK 0019 was not a qualified written request.

---

[49]  Exhibits Addendum, Ex. 26, at JK 0017 (Docket No. 96).

[50]  <u>See</u> <u>MorEquity, Inc. v. Naeem</u>, 118 F. Supp. 2d 885, 901 (N.D. Ill. 2000).

[51]  Exhibits Addendum, Ex. 26, at JK 0019 (Docket No. 96).

[52]  <u>Id.</u>

[53]  <u>Id.</u>

5.      JK 0020

JK 0020 is a fax cover sheet, dated February 24, 2006.[54]  It contained no message, and therefore is not a qualified written request.

6.      JK 0021

JK 0021 is a fax cover sheet, dated February 28, 2006.[55]  On the cover sheet, Kee informed the Bank that he had filed a complaint because the Bank allegedly violated the law.  Kee did not request any information about loan servicing.  It therefore is not a qualified written request.

7.      JK 22, 23, 26, 27, 28, and 29

Documents JK 0022–23 and JK 0026–29 are six, nearly identical letters that are dated either March 10, 2006 or March 11, 2006 ("March Letters").[56]  Each of the March Letters contained Kee's name, address, and account number, and asked for an explanation regarding the amount Kee owed on his account.  The March Letters also made reference to the validity of Kee's loan, but such a reference did not negate the fact that Kee asked for an explanation regarding amounts he owed on his account.  The March Letters were qualified written requests.

a.      Acknowledge Receipt—20 Days

The record lacks evidence that the Bank sent a written response acknowledging receipt of the March Letters within twenty business days.  The Bank asserts it did respond to the March Letters on

---

[54]  Id., Ex. 26, at JK 0020.

[55]  Id., Ex. 26, at JK 0021.

[56]  Id., Ex. 26, at JK 0022–23, JK 0026–29.

April 18, 2006, and that it did not respond earlier because it was waiting to resolve a Small Claims

action with Kee.  The record indicates that a Small Claims Judgment was entered on April 3, 2006.[57]

The twentieth business day was on or about April 7, 2006.  Consequently, the Bank had sufficient

time to acknowledge receipt of the March Letters even if the Small Claims action somehow justified

a delayed response.  The court thus concludes the Bank failed to acknowledge receipt of the March

Letters within the time specified by RESPA.[58]  Kee is entitled to summary judgment on this point.

Kee asserts the Bank's failure to follow RESPA invokes a separate violation for each letter.

The court disagrees.  As stated previously, the March Letters are nearly identical.  All six were sent

either on March 10, 2006 or March 11, 2006.  Sending a loan servicer multiple letters per day that

say nearly the same thing equals but one real request for information.  The court therefore holds that

the Banks failure to timely acknowledge the March Letters constituted one violation of RESPA.

### b.    Respond—60 Days

RESPA allows a loan servicer sixty business days to respond substantively to a qualified

written request.[59]  The April 18, 2006 letter falls within this time frame.  Although the Bank asserts

its letter responded to the March Letters, the Bank's letter did not refer to any of these documents.[60]

Instead, it referred to another letter Kee sent on April 13, 2006.  The Bank's letter did explain,

---

[57]  Exhibits Addendum, Ex. 20 (Docket No. 96).

[58]  See 12 U.S.C. § 2605(e)(1)(A).

[59]  Id. § 2605(e)(2).

[60]  Exhibits Addendum, Ex. 22 (Docket No. 96).

though, what amounts were owed and how funds were applied month-by-month to Kee's account.[61] The Bank therefore complied with RESPA's second requirement by responding to the March Letters within sixty days.

8.   <u>JK 0025</u>

JK 0025 is a fax cover sheet, dated March 7, 2006.[62]  It contained no message, and therefore is not a qualified written request.

9.   <u>JK 0031–32</u>

JK 0031–32 is a letter, dated March 23, 2006.[63]  As with the March Letters, Kee asked to know how the Bank calculated the amount he owed, and he also challenged the validity of the loan. Again, a loan servicer cannot ignore a request for information merely because the letter contains other information that does not relate to loan servicing.  This document is a qualified written request.

The Bank argues that the April 18, 2006 letter also responded to this document.  If that is true, then the Bank met the time frames for acknowledging and responding to the March 23, 2006 letter.   The March 23, 2006 letter asked the Bank to explain its calculations because Kee's calculations of payments, late fees, and other charges did not match the Bank's.  The Bank's April 18, 2006 letter addressed how Kee's payments were applied month-by-month.  It further explained that all late fees and other charges had been waived.  The Bank therefore responded to Kee's

---

[61] <u>Id.</u>

[62] <u>Id.</u>, Ex. 26, at JK 0025.

[63] <u>Id.</u>, Ex. 26, at JK 0031–32.

questions, and satisfied its obligations under RESPA.

        10.   <u>JK 0033–34</u>

JK 0033–34 is an undated letter.[64]  Kee informed the President of the Bank that he had attempted to have the PMI removed from his loan for over a year.  He also stated a person at the Bank could not explain a notice claiming that he owed $1,388.94 on his account when he called.[65] Despite these references, a review of the letter discloses that Kee made no request for information about his account.  Instead, the statements were to inform the Bank's President about the Bank's actions, its alleged violations of federal law, and that Kee intended to pursue legal remedies. Because the letter pertained to litigation rather than loan servicing, the letter was not a qualified written request.

        11.   <u>JK 0035</u>

JK 0035 is a fax cover sheet, dated March 27, 2006.[66]  It contained no message, and therefore is not a qualified written request.

        12.   <u>JK 0036</u>

JK 0036 is a fax cover sheet, dated March 27, 2006.[67]  It contained no message, and therefore is not a qualified written request.

---

[64]  Exhibits Addendum, Ex. 26, at JK 0033–34 (Docket No. 96).

[65]  Asking for account information by telephone is not a qualified written request.  <u>See</u> 12 U.S.C. § 2605(e)(1)(B) (stating "a qualified written request shall be a written correspondence").

[66]  Exhibits Addendum, Ex. 26, at JK 0035 (Docket No. 96).

[67]  <u>Id.</u>, Ex. 26, at JK 0036.

13.   <u>JK 0038</u>

JK 0038 is a letter, dated April 13, 2006, wherein Kee disputed the amount currently due because the Bank assessed a "returned check charge" to his account.[68]  He also enclosed a check to reduce the amount of his principal so the PMI could be removed.  The Bank admits the letter relates to loan servicing.  The Bank responded to the letter on April 18, 2006 and properly addressed the issues raised by Kee.  Kee acknowledges this fact in document control number JK 0045.[69]  The Bank therefore has met its obligation under RESPA.

14.   <u>JK 0044</u>

JK 0044 is a fax cover sheet, dated April 25, 2006.[70]  It contained no message, and therefore is not a qualified written request.

15.   <u>JK 0045–46</u>

JK 0045–46 is a letter, dated April 25, 2006.[71]  Kee informed the Bank that he would not make further payments until the Bank explained why it failed to properly respond to his RESPA requests.  Kee also stated he intended to file a claim against the Bank and disputed receiving certain documents.  Kee further contended that the loan was invalid.  This letter did not relate to loan servicing.  It asked for information about the Bank's compliance with the law rather than information

---

[68]  <u>Id.</u>, Ex. 26, at JK 0038.

[69]  <u>Id.</u> (stating "I will accept your correspondence dated April 18, 2006 as the first acceptable 'answer with respect to inquiry.'").

[70]  <u>Id.</u>, Ex. 26, at JK 0044.

[71]  <u>Id.</u>, Ex. 26, at JK 0045–46.

regarding Kee's account.  Additionally, threats relating to litigation and contentions that a loan is invalid are outside the scope of RESPA.  Consequently, JK 0045–46 is not a qualified written request.

      16.    <u>JK 0047</u>

JK 0047 is a fax cover sheet, dated April 26, 2006.[72]  Kee informed the Bank that he inadvertently sent a wrong page in his letter and was substituting it with another page.  No request for information about his account was made on the cover sheet.  The document is not a qualified written request.

      17.    <u>JK 0049</u>

JK 0049 is a fax cover sheet, dated May 3, 2006.[73]  Kee thanked the Bank for removing the PMI and asked for "a refund of the unearned premium from March of 2005."  On May 10, 2005, the Bank acknowledged receipt of the cover sheet.  It also referred Kee back to the Bank's letter of April 18, 2006, wherein the Bank set out how money was applied to his account and that he did not qualify to have his PMI removed until April 2006.  Because Kee's cover sheet did not refer to a new dispute related to loan servicing, the Bank's response was sufficient to satisfy RESPA.

      18.    <u>JK 0050</u>

JK 0050 is a fax cover sheet, dated May 5, 2006.[74]  It stated that a copy of Kee's April 25,

---

[72]  Exhibits Addendum, Ex. 26, at JK 0047 (Docket No. 96).

[73]  <u>Id.</u>, Ex. 26, at JK 0049.

[74]  <u>Id.</u>, Ex. 26, at JK 0050.

2006 letter (JK 0045–46) was attached, along with the Bank's response.  Kee asked the Bank to

address each issue.  As stated above, Kee's April 25, 2006 letter is not a qualified written request.

Moreover, nothing in the fax cover sheet pertained to loan servicing.  Instead, Kee referred to a tax

form and stated he was filing more claims against the Bank.  JK 0050 is therefore not a qualified

written request.

                19.    <u>JK 0051</u>

JK 0051 is a fax cover sheet, dated May 5, 2006.[75]  It likewise referred to a tax form and

made threats of litigation.  Nothing in the fax cover sheet pertained to loan servicing.  JK 0051 is not

a qualified written request.

                20.    <u>JK 0054</u>

JK 0054 is a fax cover sheet, dated May 15, 2006.  Kee informed the Bank he sent a request

to the Office of Thrift Supervision, and that the request was attached to the fax.  The court received

no attached document, so the court makes no ruling regarding it.  The fax cover sheet itself, however,

did not include a request for information regarding loan servicing.  It therefore is not a qualified

written request.[76]

---

[75]  <u>Id.</u>, Ex. 26, at JK 0054.

[76]  Although RESPA did not require the Bank to respond to the fax cover sheet, the Bank
nevertheless acknowledged receipt of the cover sheet.  <u>See id.</u>, Ex. 26, at JK 0056 .  It also referred
Kee to the Bank's April 18, 2006 letter.  <u>Id.</u>

21.   <u>JK 0057</u>

JK 0056 is a fax cover sheet, dated May 26, 2006.[77]  Kee stated he was confused by a late

notice he received on his account, and he asked how he owed a certain amount on his account.  He

referenced $450.00 that the Bank had of his money, but it is unclear from the letter whether Kee

expected that amount to be applied to his account.   Nevertheless, Kee's request for information

pertained to a new dispute about his account.  The Bank responded to Kee's request on June 12,

2006.  The Bank informed Kee that the amount he owed was based on a monthly payment amount,

plus a late fee.  The specific amounts owed for the monthly payments and late fees were stated

individually in the Bank's letter.  The Bank did not address Kee's reference to the $450.00 in the

letter.

The April 18, 2006 letter from the Bank, however, enclosed a check to Kee for $450.00 to

return that money to him.[78]  The Bank noted this was a second attempt to return the money to Kee,

and stated, "The decision not to cash this check is yours to make as it is your money and does not

belong to RG-Crown Bank."[79]  Kee has provided no evidence to refute the Bank sent Kee this check.

Based on the evidence, Kee has no foundation to dispute that his account was in error because the

$450.00 was not applied to his account, if he is indeed arguing that the money should have been

applied to his account.  The Bank therefore satisfied its obligation under RESPA regarding this

---

[77]  Exhibits Addendum, Ex. 26, at JK 0057 (Docket No. 96).

[78]  <u>Id.</u>, Ex. 22, at 2.

[79]  <u>Id.</u>

request.

      22.    <u>JK 0062</u>

JK 0062 is a fax cover sheet, dated June 22, 2006.[80]  Kee asked the Bank to explain why it had not responded to his requests.  He then asked the Bank to explain how the loan was valid and why the Bank requested $450.00 for an appraisal and then stole the money when it received it.  Again, RESPA does not pertain to a loan's validity.  Moreover, the Bank has provided evidence that it  properly handled the $450.00.  Neither of these issues relate to loan servicing.  Consequently, JK 0062 is not a qualified written request.

      23.    <u>JK 0063</u>

JK 0063 is a fax cover sheet, dated June 23, 2006, wherein Kee asked why the Bank filed "a frivolous law suit."[81]  The cover sheet did not pertain to loan servicing, and was not a qualified written request.

      24.    <u>JK 0069</u>

JK 0069 is a fax cover sheet, dated November 27, 2006.[82]  Kee again threatened litigation and also threatened to inform shareholders about the Bank's actions.  The cover sheet did not pertain to loan servicing, and was not a qualified written request.

---

[80]  <u>Id.</u>, Ex. 26, at JK 0062.

[81]  <u>Id.</u>, Ex. 26, at JK 0063.

[82]  <u>Id.</u>, Ex. 26, at JK 0069.

25.    JK 0147

The Bank asked the court for summary judgment that JK 0147 is not a qualified written request because it was sent to the Bank's counsel. This document was not provided to the court. It therefore cannot make that determination. If the document, however, was sent to the Bank's counsel, and not to the Bank, then the analysis in paragraph III.B above would apply.

26.    CB 00281–82

CB 0281–82 is a letter, dated August 8, 2005.[83] Kee summarized the correspondence and conversations he had with the Bank between June 15, 2005 and August 8, 2005. Issues related to loan servicing were discussed in some of the communications, according to the summarization. Kee stated he sent a fax on June 15, 2005 that asked for an explanation about alleged improper fees. The document was not included in the documents filed with the court and therefore the court lacks sufficient evidence to find a RESPA violation.

Kee then referred to a letter for which the Bank signed on June 27, 2005. Based on the date this letter was received and its stated contents, it appears that Kee was referring to document JK 006 that is discussed in paragraph III.D.2 above. The Bank properly responded to that communication. The remaining communications addressed in the summary are not qualified written requests because they were either oral communications or Kee did not make a request for information regarding loan servicing. Kee then informed the Bank that he had been advised to file a complaint if the Bank's violations continued. This statement also did not relate to loan servicing. Consequently, the Bank

---

[83]  Exhibits Addendum, Ex. 27, at CB 0281–82 (Docket No. 96).

had no obligation to respond to this letter under RESPA.

## IV.    DAMAGES

Kee has failed to prove that the Bank engaged in a pattern or practice of noncompliance with RESPA requirements.  Consequently, he is not entitled to statutory damages.[84]  Instead, Kee must prove that he suffered actual damages as a result of the Bank's failure to acknowledge receipt of his March Letters within twenty days.[85]  The court stresses that evidence relating to Kee's other communications may not be used to prove actual damages because no RESPA violation occurred with respect to the other communications.

## V.    FANNIE MAE AND JONATHAN MEAD

Kee also filed suit against Fannie Mae and Jonathan Mead on the basis that they did not provide him a loan payoff statement.  RESPA states that a "loan servicer" must respond to a qualified written request and that it can face liability if it fails to respond.[86]  This obligation only pertains to the loan servicer itself.  Nothing in RESPA states it extends to the individual employees of a loan servicer, nor has Kee provided any authority to support such an extension.  Moreover, Kee has provided no authority or evidence to show why the actions of the Bank should be imputed to Fannie Mae, who is the owner, not the servicer, of the loan.  Consequently, the court dismisses these two defendants from this action.

---

[84]  12 U.S.C. § 2605(f)(1)(B).

[85]  See id. § 2605(f)(1)(A).

[86]  Id. § 2605(e).

## VI.    OTHER CLAIMS ASSERTED BY KEE

### A.    Breach of Contract

When Kee signed his loan documents, he signed a Disclosure Statement.  Kee contends the Bank has breached the Disclosure Statement due to its failure to respond to Kee's qualified written requests.  The Disclosure Statement informed Kee that he has certain rights under RESPA.  It then states, "This *statement* tells you about those rights."[87]  The document also has an Acknowledgment of Mortgage Loan Applicant section that states, "I/We have read this disclosure form, and understand its contents, as evidenced by my/our signature(s) below."[88]  Based on the nature of the form and the language in it, it is apparent the Disclosure Statement is not an agreement between Kee and the Bank.  Instead, it is merely a form that disclosed information to Kee.  Kee's signature on the form was to acknowledge receipt of the form and his understanding about the information disclosed; it was not for purposes of entering into a contract.  Because the document is not a contract, even if the Bank did violate RESPA, Kee has no cause of action for breach of contract.  Accordingly, this claim is dismissed.

### B.    Fair Debt Collection Practices Act

Kee asserted a claim under the Fair Debt Collection Practices Act ("FDCPA").  He conceded in his summary judgment briefing, however, that the FDCPA does not apply based on the particular

---

[87]  Exhibits Addendum, at Ex. 4 (Docket No. 96) (emphasis added) .

[88]  Id.

facts of this case.[89]  That cause of action is therefore dismissed.

Kee seeks leave, however, to amend his complaint to assert a new cause of action under the Utah Consumer Sales Practices Act.  Kee has been provided with multiple opportunities to amend his complaint in the past.  In an Order, dated May 16, 2008, the court denied Kee's motion to amend his complaint again.[90]  The parties have now filed dispositive motions and amending the complaint to add a new cause of action this late in the litigation would unduly delay this case and prejudice the Bank.  The court therefore denies Kee's request for leave to amend his complaint.

### C.    Fair Credit Reporting Act and Defamation

Kee also asserted a claim under the Fair Credit Reporting Act ("FCRA") because the Bank allegedly failed to investigate when Kee disputed negative credit information that the Bank had reported to credit reporting agencies.  FCRA requires one who furnishes information to credit reporting agencies to (1) "provide accurate information; and (2) to undertake an investigation upon receipt of notice of dispute regarding credit information that is furnished."[91]  "If it is assumed that a private right of action exists under [15 U.S.C. § 1681s-2(b)], the plaintiff must show that the furnisher received notice from a consumer reporting agency, not the plaintiff, that the credit information is disputed."[92]

Kee's complaint fails to allege that Kee contacted credit reporting agencies to dispute the

---

[89]  Mem. in Opp. to Defendant's Mot. for Summary Jdgmt., at 33 (Docket No. 112).

[90]  Order, at 3 (Docket No. 102).

[91]  Downs v. Clayton Homes, Inc., 88 Fed. Appx. 851, 853 (6th Cir. 2004).

[92]  Id. at 853–54 (citation omitted).

credit reporting.  Kee also has provided no evidence to show he contacted such agencies, nor has he provided any evidence to show the Bank received notice from the credit reporting agencies that the credit information was disputed.

Kee asks for leave to amend his complaint to assert more clearly that he did contact the credit reporting agencies.  Given that Kee has proffered no evidence to show that he notified the credit reporting agencies about the dispute, or that the Bank received notification of a dispute from such agencies, leave to amend is not appropriate.  Accordingly, the court denies leave to amend and dismisses this cause of action.  Likewise, the court dismisses Kee's claim for defamation because Kee has submitted no evidence to show that the Bank reported false information to a credit reporting agency.

## VIII.  INJUNCTIVE RELIEF

The Bank asks the court to issue an injunction against Kee.  Specifically, the Bank asks the court to enjoin Kee "from filing additional suits against Fifth Third, its employees, agents and counsel that attempt to relitigate any matters that have been decided by this suit or any of the prior suits against Crown Bank, including any causes of action which could have been asserted, as well as, those which were asserted."[93]

On or about July 21, 2005, Kee filed an action in Small Claims Court against Crown Bank because it did not remove the PMI.  Kee filed a second action in Small Claims Court on August 9, 2005, which alleged violation of the FCRA.  Both cases were dismissed for no cause of action.  Kee

---

[93]  Mem. in Supp. of Mot. for Summary Jdgmt., at 21–22 (Docket No. 91).

then appealed the decisions to the Third District Court in and for the State of Utah.  The District Court upheld the dismissals.

On or about May 8, 2006, Kee filed a third action in Small Claims Court alleging violations of RESPA.  Kee then filed a fourth action in Small Claims Court on June 23, 2006, which also alleged violations of RESPA.  Both cases were removed to this court and consolidated under the present case number.  On December 20, 2007, Kee filed a fifth action in Small Claims Court, this time against Fannie Mae and Jonathan Meade for RESPA and FDCPA violations.  That case also was removed and consolidated with this case.

On October 30, 2008, this court heard oral argument on Kee's motion for a preliminary injunction.  Kee sought to enjoin the Bank from proceeding with a foreclosure action against his property.  After the court denied that motion because of Kee's failure to show a substantial likelihood of success on the merits, Kee filed another action in this court.  That action is directed at Crown Bank, Fifth Third Bank, counsel for the Bank, and others for purported violations of the law relating to the foreclosure of his property.  In addition, Kee has threatened to bring other actions against the Bank.[94]

By law, "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."[95]  The United States Tenth Circuit Court of Appeals has stated that a "district court has the

---

[94]  Exhibits Addendum, Ex. 29, at J (Docket No. 96).

[95]  28 U.S.C. § 1651(a).

power under 28 U.S.C. § 1651(a) to enjoin litigants who abuse the court system by harassing their opponents."[96]

Kee has threatened legal action against the Bank numerous times and has filed six separate lawsuits—all stemming from his initial dispute with the Bank about PMI.  The court finds that Kee's actions constitute an abuse of the court system.  Accordingly, the court hereby enjoins Kee from filing additional suits against the Bank and its employees, agents, and counsel, but the injunction is limited in scope.  Specifically, Kee is enjoined from filing additional suits for all causes of action that were or could have been included in this lawsuit or one of the other five lawsuits.  Kee also is enjoined from bringing any of the same causes of action that have already been raised in his six lawsuits, provided that the event giving rise to the cause of action occurred on or before October 30, 2008.[97]  If Kee believes that actions taken by the Bank, or its employees, agents, or counsel after October 30, 2008 have violated the law, Kee is not enjoined from bringing suit for such new causes of action.  The court cautions Kee, however, not to abuse this right.

## CONCLUSION

For the foregoing reasons, Kee's Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART.[98]  The Bank's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.[99]  Of the fifty-one alleged RESPA violations, the court grants

---

[96]  Tripati v. Beaman, 878 F.2d 351, 352 (10th Cir. 1989).

[97]  That is the date of Kee's last lawsuit.

[98]  Docket No. 118.

[99]  Docket No. 90.

-31-

summary judgment in Kee's favor on only one. The Bank failed to acknowledge receipt of the March Letters within twenty days, as discussed in section III(D)(7)(a) above. The court denies the remainder of Kee's motion for summary judgment. Except for the one RESPA violation discussed in section III(D)(7)(a) above, the court grants summary judgment in the Bank's favor on all other alleged RESPA violations. The court further grants summary judgment in the Bank's favor on Kee's breach of contract, FDCPA, FCRA, and defamation claims, and enjoins Kee from filing certain additional actions as specified in the section VIII above. Moreover, the court grants summary judgment in favor of Fannie Mae and Jonathan Meed and dismisses them from the case.

DATED this 17th day of March, 2009.

BY THE COURT:

Clark Waddoups
United States District Judge

-32-